UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Otis James Compton, | Civil Action No.: 2:15-3310-BHH |
| Petitioner, | |
| vs. | **Opinion and Order** |
| Warden Leroy Cartledge, | |
| Respondent. | |

Petitioner, Otis James Compton, ("Petitioner"), filed this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (ECF No. 1.) In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(d), D.S.C., the action was referred to United States Magistrate Judge Mary Gordon Baker, for pretrial handling and a Report and Recommendation ("Report"). Magistrate Judge Baker recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's § 2254 petition be dismissed. (ECF No. 23.) The Report sets forth in detail the relevant facts and standards of law on this matter and the Court incorporates them without recitation.

## BACKGROUND

Petitioner filed this action against Respondent alleging, *inter alia,* ineffective assistance of counsel in proceedings related to Petitioner's indictment and subsequent conviction on various charges related to the murder of Johnny Hanna: burglary, murder, armed robbery, malicious injury to real property, and possession of a firearm or knife during the commission of a violent crime. (ECF Nos. 12-9 at 104; 12-12 at 38–40.) On August 1, 2016, the Magistrate Judge issued a Report; and, on September 2,

2016, Petitioner filed his Objections.[1] (ECF No. 27.) Respondent filed a reply on August 19, 2016. (ECF No. 28.) Having carefully reviewed the record, the Court finds that the Magistrate Judge has accurately and adequately summarized the disputed and undisputed facts relevant to this action. The Court has reviewed the objections, but finds them to be without merit. Therefore, it will enter judgment accordingly.[2]

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to the district court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the district court. *Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the Magistrate Judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

---

[1] The Court granted Petitioner's counsel an extension to file objections on August 16, 2016. (ECF No. 26.)
[2] As always, the Court says only what is necessary to address Petitioner's objections against the already meaningful backdrop of a thorough Report of the Magistrate Judge, incorporated entirely by specific reference, herein, to the degree not inconsistent. Exhaustive recitation of law and fact exists there.

**DISCUSSION**

The Magistrate Judge found that each of Petitioner's claims fail on their merits in her extremely thorough forty-five page Report. While Petitioner purportedly objects to the entire Report, he does not offer any specific objections as to Grounds One and Two. Rather, in objecting to these two grounds, Petitioner "incorporates by reference" the arguments put forth in his "Reply in Opposition to Respondent's Motion for Summary Judgment." (ECF No. 27 at 4–5.) Because Petitioner fails to point to any specific error in the Report as to these grounds, the Court reviews Grounds One and Two for clear error. *See Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982) ("Courts have . . . held *de novo* review to be unnecessary in . . . situations when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed recommendation").

Ground One alleges that Petitioner's constitutional rights were violated when statements he "made to the police in furtherance of an unkept written agreement" were admitted "against him during his subsequent murder trial, where the statements in question were induced by promises of leniency in exchange for information about the murder." (ECF No. 1-1 at 4.) The Magistrate Judge discussed this claim in exhaustive detail. (ECF No. 23 at 13–20.) She first quoted the entire written plea agreement ("the agreement") referenced in this claim wherein the State agreed to reduce the sentences on unrelated,[3] unspecified burglary charges "by all reasonable means," subject to certain conditions, including Petitioner's truthful cooperation in the investigation of the

---

[3] The burglary charges referenced in the plea agreement had no connection to any charges related to the murder of Johnny Hanna.

death of Johnny Hanna ("Hanna"). (*Id.* at 14–15; ECF No. 12-11 at 259–260.) The Magistrate Judge then quoted both the trial court and appellate court's findings that: (1) the agreement could not be interpreted to affect any potential charges against Petitioner relating to the burglary of Mr. Hanna's home and his murder; and (2) Petitioner breached the agreement by failing to cooperate truthfully. (ECF No. 23 at 16–18.) She correctly found that the "state court's rejection of this claim is not contrary to, or an unreasonable application of, clearly established federal law, nor did the adjudication result in an unreasonable determination of the facts." (*Id.* at 19.) The Court finds no error in the Magistrate Judge's conclusions here and grants summary judgment on Ground One.

Ground Two alleges that the South Carolina Court of Appeals "erred by holding Petitioner's statements to informant Tracey Black ["Black"] were not obtained in violation of Petitioner's Sixth Amendment right to counsel where Black initiated contact with Petitioner while he was a government agent, and while Petitioner was represented by counsel on the plea agreement with the state."[4] (ECF No. 1-1 at 28.) Here, the Magistrate Judge quoted the South Carolina Court of Appeals' discussion of this allegation. (ECF No. 23 at 21.) Noting that the Sixth Amendment right to counsel is offense-specific, the Court of Appeals found that because Petitioner was not indicted on the charges related to the Hanna murder until after he provided information to Black, there was no Sixth Amendment violation regarding information gathered by

---

[4] As explained in detail in the Report, Black was an inmate housed with Petitioner for a period of time while Petitioner was incarcerated on the unrelated burglary charges. (ECF No. 23 at 8–11.) Black cooperated with the police officers, reporting to them anything Petitioner told him about the Hanna murder. (*Id.*)

4

Black from Petitioner about the Hanna murder. *State v. Compton*, 623 S.E.2d 661, 666 (S.C. Ct. App. 2005); *see State v. Council*, 515 S.E.2d, 508, 515 (S.C. 1999) ("The Sixth Amendment right [to counsel] attaches only 'post-indictment,' at least in the questioning/statement setting." (citing *Michigan v. Harvey*, 494 U.S. 344 (1990)). The Magistrate Judge correctly found that the Court of Appeals findings here were not "contrary to, or an unreasonable application of, clearly established federal law, nor did the adjudication result in an unreasonable determination of the facts." (ECF No. 23 at 21.) Finding no error in the Magistrate Judge's conclusions, the Court grants summary judgment on Ground Two.

As noted above, Petitioner makes specific objections regarding his remaining claims for habeas relief. The Court therefore conducts *de novo* review on Grounds Three through Seven. Ground Three alleges that the South Carolina Court of Appeals "erred by ruling the trial court did not impermissibly limit his cross-examination of Solicitor Jones regarding his prior testimony at a pre-trial hearing." (ECF No. 1-1 at 30.) Specifically, Petitioner alleges that the trial court's "limitation on this permissible confrontation" violated his "Constitutional right to confrontation as protected by the Sixth and Fourteenth Amendments" where the solicitor "admitted in that testimony that he contemplated Petitioner's attorney [Joe Smithdeal] being involved in the future to fulfill the terms of the plea agreement and, therefore, the solicitor's testimony at the prior hearing was admissible as a prior inconsistent statement." (*Id.*)

To address this claim, the Magistrate Judge first quoted the relevant testimony given by Solicitor Jones at Petitioner's trial. She also quoted the South Carolina Court

of Appeals' treatment of this claim. (ECF No. 23 at 23–25.) The Court of Appeals found that the trial court did not err in limiting the examination of Solicitor Jones, noting that the testimony counsel sought to elicit from Solicitor Jones "was not relevant to the issue of [Petitioner's] guilt or innocence" and was also "based upon pure speculation that counsel would continue in his involvement." *Compton*, 623 S.E.2d at 666–667. The Magistrate Judge agreed with these findings and found that the trial court appropriately exercised its discretion in "declin[ing] to allow the Solicitor to speculate about future events." (ECF No. 23 at 26 (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986) ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.")).)

Importantly, the Magistrate Judge found that even if the limitation of the examination of Solicitor Jones was erroneous, Petitioner is still not entitled to federal habeas relief under the harmless-error analysis. (*Id.*) She correctly noted that "the constitutionally improper denial of a defendant's opportunity to impeach a witness, like other Confrontation Clause errors, is subject to a *Chapman* [*v. California*, 386 U.S. 18 (1967)] harmless-error analysis." (*Id.* (quoting *Van Arsdall*, 475 U.S. at 684) (internal quotations omitted).) Here, "[t]he correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." (*Id.* (quoting *Van Arsdall*, 475 U.S. at 684) (internal quotations omitted).) Applying this

standard, the Magistrate Judge found it "difficult to envision any significant alteration to Petitioner's trial" even if counsel had been able to ask Solicitor Jones about his prior statement. (ECF No. 23 at 27.) She emphasized that "Solicitor Jones' testimony had nothing to do with whether Petitioner committed the crimes at issue." (*Id.*)

Here, Petitioner argues that the testimony his counsel sought to elicit from Solicitor Jones was "material to arguments being advanced by the defense . . . [to suppress the] statements made by [Petitioner] after the agreement was entered." (ECF No. 27 at 6–7.) More specifically, Petitioner asserts that "the Solicitor's belief that Attorney Smithdeal would continue to represent Petitioner on the full subject matter covered by the agreement was relevant to the position of the defense regarding statements made as a consequence of that agreement." (*Id.* at 6.) To the extent these arguments focus on immunity allegedly provided by the agreement, the Court of Appeals correctly noted that "[t]he jury was not entitled to determine whether the agreement provided transactional immunity, as that was a question of contract interpretation before the court." *Compton*, 623 S.E.2d at 667.

The Court agrees with the Magistrate Judge that the trial court did not violate clearly established federal law in limiting Solicitor Jones testimony concerning his "contemplations" for the future. Further, Petitioner has failed to establish that the alleged constitutional violation was not harmless beyond a reasonable doubt. On this point, Petitioner argues that "the revelation of these prior inconsistent statements would have cast doubt on the credibility of this important witness by contradicting his trial testimony and would have provided evidence the jury may have found supported

7

Petitioner's claim that his statements regarding this murder were not freely and voluntarily entered." (ECF No. 27 at 7.) The Court is not convinced of the materiality, much less the purported significance, of the testimony at issue. Petitioner does not explain how Solicitor Jones' "contemplation" of Attorney Smithdeal's future representation of Petitioner would be relevant to determining Petitioner's guilt at trial. As for Petitioner's credibility argument, the Court notes that the jury would likely already have accounted for some bias in Solicitor Jones' testimony, given that he prosecuted Petitioner's case. In short, the Court finds that any alleged error in the limitation of Solicitor Jones' testimony "was harmless beyond a reasonable doubt." *Van Arsdall*, 475 U.S. at 684. This objection is therefore overruled.

Ground Four alleges that Attorney Smithdeal was constitutionally ineffective in failing "to obtain a definitive immunity agreement with the State before permitting the Petitioner to provide a statement to police concerning the murder of the victim." (ECF No. 1-1 at 34.) To address this claim, the Magistrate Judge quoted Attorney Smithdeal's ("Smithdeal") relevant testimony from the PCR hearing as well as the PCR court's related findings. (ECF No. 23 at 28–30.) In finding that Petitioner failed to establish a constitutional violation, the Magistrate Judge emphasized that: (1) the record indicated that Solicitor Jones was unwilling to offer Petitioner immunity for information; and (2) Petitioner insisted on speaking with the police, despite Smithdeal's advice that he not do so. (*Id.* at 31.) Based on this evidence, the Magistrate Judge concluded that counsel could not be deemed ineffective for failing to obtain immunity that the solicitor clearly would not grant and, further, that Petitioner could not

demonstrate prejudice when he voluntarily offered incriminating statements before he entered into the agreement. (*Id.*)

Although Petitioner objects at length to the Magistrate Judge's findings on this claim, he mostly restates the same argument previously raised to the Magistrate Judge—that Smithdeal erred by failing to draft the agreement in such a way that it was explicitly clear to Petitioner that he would not receive immunity for charges related to the Hanna murder in exchange for information. (ECF No. 27 at 8–13.) Petitioner also argues that Smithdeal should have explained "South Carolina accomplice liability law" to him "in detail" after Petitioner expressed confusion as to how he could be charged with Hanna's murder. (*Id.* at 12–13.) Petitioner contends that Smithdeal's failure to provide such explanation and his failure to include clearer language in the agreement deprived Petitioner of his ability to voluntarily waive his Fifth Amendment right to remain silent in subsequent conversations with the police. (*Id.* at 12.)

As the Magistrate Judge correctly stated, to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy both parts of the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). (ECF No. 23 at 27.) The petitioner first must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687–88. In making this determination, a court considering the habeas corpus petition "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. If counsel's performance is found to have been deficient under the first part of the *Strickland* standard, to obtain relief the petitioner must also show that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694, and "[t]he likelihood of a different result must be substantial, not just conceivable," *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Here, Petitioner's arguments fail to establish that Smithdeal's representation fell below an objective standard of reasonableness. At the time Petitioner entered the agreement, Smithdeal was his court-appointed attorney for burglary charges unrelated to the Hanna murder. (ECF No. 12-12 at 89, Smithdeal Test. 29 ¶¶ 9–18.) In reference to the agreement, Smithdeal expressly told Petitioner that it was not in his interest to reduce the burglary charges at the risk of potentially exposing himself to a life sentence for murder. (*Id.* at 96–97, Smithdeal Test. 36 ¶¶ 22–25, 37 ¶¶ 1–15.) At the PCR hearing, Smithdeal testified he told Petitioner that "it was my opinion that the police were looking to jail him for the Hanna murder and that this deal that [Petitioner] wanted to do, in fact he was insisting that we do against my advice, that it may never work." (*Id.* at 97, Smithdeal Test. 37 ¶¶ 4–8.) However, Smithdeal recognized that he ultimately could not decide for Petitioner whether to enter into the agreement, stating,

> I insisted to [Petitioner], "You keep your mouth shut and, you know, this thing will leave you alone." So, maybe we could have waited, maybe, you know, maybe I should have said, "Don't do anything, I'm not going to let you do anything," but you know, he wanted to do it and it wasn't my decision, really.

(*Id.* at 101, Smithdeal Test. 41 ¶¶ 3–8.)

Smithdeal further testified that he specifically made sure Petitioner understood there were no provisions in the agreement that protected him from prosecution for murder as a co-conspirator in the death of Mr. Hanna. (ECF No. 12-12 at 97, Smithdeal Test. 37 ¶¶ 16–22.) Smithfield stated that he explained to Petitioner he could still be charged for Mr. Hanna's murder despite never entering Mr. Hanna's home when the actual robbery and murder took place. (Id. at 103–104, Smithfield Test. 43 ¶¶ 10–25, 44 ¶¶ 1–12.) Smithfield testified that "[Petitioner] kept insisting, 'I wasn't even there, I wasn't even on the property, I wasn't even in the neighborhood,' and I said, 'Otis [Petitioner], they are going to use what you say and they are going to bring charges.'" (*Id.* at 104, Smithfield Test. 44 ¶¶ 8–12.)

Based on the above testimony and the other evidence in the record, the Court finds that Smithfield's conduct falls within the "wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Although Smithfield may have failed to use the precise wording Petitioner would have preferred in hindsight, both in drafting the agreement and explaining the concept of accomplice liability, *Strickland* does not require that counsel provide an idealized version of representation. *See Harrington*, 562 U.S. at 105 ("It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.'" (quoting *Strickland*, 466 U.S. at 689)). Indeed, "[t]he critical question [under *Strickland*] is 'whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom.'" *Winston v. Pearson*, 683 F.3d 489, 504 (4th Cir. 2012) (quoting *Harrington*, 562 U.S. at 105; *Strickland*, 466 U.S. at 690).

Even if Smithfield's representation could be construed as ineffective, Petitioner has failed to demonstrate prejudice from such alleged ineffective assistance. As the PCR court found, Petitioner made multiple voluntary statements to the police before entering into the agreement, including statements which placed him at the scene of the crime. (*See, e.g.*, ECF Nos. 12-5 at 306; 12-7 at 66.) Thus, there is not a "substantial" likelihood that Petitioner would have been protected from the consequences of his voluntary statements even if he had stopped speaking to the police after he entered into the agreement. *See Harrington*, 562 U.S. at 112. In sum, the Court finds that Petitioner failed to carry his burden of establishing counsel was ineffective as required by *Strickland* and that the ruling of the PCR court was reasonable on this claim. This objection is therefore overruled.

Ground Five alleges that Smithdeal was ineffective in failing "to assert the Petitioner's right to remain silent and [in] fail[ing] to establish his position as counsel for the Petitioner in connection with anything relating to this homicide and any charges which might be brought relating to it." (ECF No. 1-1 at 39.) In her Report, the Magistrate Judge quoted both the Petitioner's arguments supporting this claim and the PCR court's lengthy discussion of the claim. (ECF No. 23 at 31–35.) She again noted that the Sixth Amendment right to counsel is offense-specific and that Smithdeal did not form an attorney-client relationship with Petitioner to cover the charges at issue in this case. (*Id.* at 35.) She further noted that Petitioner voluntarily spoke to the police and waived his Miranda rights, despite Smithdeal's advice that he not talk to the police.

12

(*Id.* at 36.) She recommended that Petitioner is not entitled to federal habeas relief on this ground.

Petitioner's arguments under this objection fail to raise any new insights into this claim—Petitioner rehashes the same arguments presented in state court and to the Magistrate Judge. Specifically, he asserts that Smithfield "had[,] by his own actions[,] assumed the role of counsel" as to the charges in the instant matter by agreeing to represent Petitioner at a July 12, 2000 meeting with Solicitor Jones and Sherriff Goodwin, and that Smithdeal was ineffective for failing to invoke Petitioner's Fifth Amendment right to counsel after that meeting. (ECF No. 27 at 13–16.)

On this claim, the Court says little, as it has already been appropriately addressed in exhaustive detail by the PCR court and the Magistrate Judge. Petitioner's assertions that Smithfield became his attorney as to the Hanna murder charges on July 12, 2000 are unavailing. Petitioner had not yet been charged with the murder, and, therefore, no Sixth Amendment right to representation had been created as to this offense. *See Council*, 515 S.E.2d, at 515. Thus, as the PCR court noted, "it is unclear how [Petitioner] can allege his Sixth Amendment right to the effective assistance of counsel has been infringed." (ECF No. 12-13 at 52.) Further, Petitioner chose to abandon his right to remain silent when he spoke to police in the months following the July 2000 meeting. *See Miranda v. Arizona*, 384 U.S. 436, 478 (1966) ("Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."). The Court finds that the ruling of the state court was reasonable on this claim and overrules Petitioner's objection.

Ground Six alleges trial counsel was ineffective in failing "to object to the State's use of the Petitioner's prior burglary convictions." (ECF No. 1-1 at 43.) Petitioner contends that during a motions hearing on November 14, 2002, defense counsel indicated that they would need to discuss the admissibility of Petitioner's prior burglary convictions. (*Id.* at 44.) He asserts, however, that "no motion to address the admissibility of the prior burglaries was ever taken up, and . . . the underlying facts of the prior burglaries, and their similarities to this crime, were eventually admitted at trial." (*Id.*)

To address this claim, the Magistrate Judge first quoted the PCR court's lengthy discussion of the claim before conducting a thorough *Strickland* analysis. Citing the record, the Magistrate Judge found that the PCR Court's findings on this claim were reasonable. Specifically, she noted that trial counsel chose a defense strategy that necessarily involved revealing Petitioner's prior burglary convictions, and found that such conduct was "virtually unchallengeable." (ECF No. 23 at 39 (quoting *Strickland*, 466 U.S. at 690) ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").) She further found that Petitioner suffered no prejudice where the trial court gave the jury a limiting instruction as to the prior convictions and where there was overwhelming evidence before the jury to implicate Petitioner's guilt. (*Id.*)

Here, Petitioner argues that the "state court misapplied the *Strickland* standard to the facts of his case." (ECF No. 27 at 17.) He then summarizes the facts upon which the state court relied to support its findings, and asserts that these facts are insufficient

14

to find that trial counsel provided effective representation and that he did not prejudice Defendant by failing to object to "the state's introduction of testimony concerning the details of Petitioner's prior convictions." (*Id.* at 17–19.)

The Court agrees with the Magistrate Judge that the state court's rejection of this claim for ineffective assistance of counsel is not contrary to, or an unreasonable application of, clearly established federal law, nor did the adjudication result in an unreasonable determination of the facts. The PCR court analyzed this claim in exhaustive detail, first finding that the trial court would not necessarily have excluded these prior convictions even if trial counsel had moved to exclude them under South Carolina Rule of Civil Procedure 403. (ECF No. 12-13 at 58–59.) The PCR court then discussed trial counsel's testimony that his defense strategy involved addressing the plea agreement, making disclosure of the burglary convictions inevitable. (*Id.* at 57, 60.) Finally, the PCR court discussed the limiting instruction given by the trial court as to the jury's consideration of the prior convictions and noted the other evidence that supported finding Petitioner guilty at trial. (*Id.* at 59–60.) Such evidence included Petitioner's sworn confession that placed him at the scene of the crime and his statements made to other prisoners concerning his participation in the crime. (*Id.*) Based on this evidence, the PCR court found that trial counsel "articulated a valid defense strategy" and that Petitioner "failed to show any prejudice that many have resulted from defense counsel's alleged deficient representation." (*Id.* at 60.)

The Court agrees with the PCR court and Magistrate Judge's thoughtful and detailed findings that Petitioner failed to carry his burden of establishing counsel was ineffective as required by *Strickland.* This objection is therefore overruled.

Ground Seven alleges that appellate counsel was ineffective in failing "to raise on direct appeal the ground that the Petitioner's Fifth Amendment rights had been violated." (ECF No. 1-1 at 48.) This claim refers specifically to Petitioner's conversations with Black that occurred after Petitioner had invoked his Fifth Amendment right to counsel. (*Id.* at 48–51.) The Magistrate Judge addressed this claim at length. She first quoted the PCR court's discussion of this claim before finding that Petitioner could not establish appellate counsel was ineffective, nor that Petitioner was prejudiced by any alleged deficiency. In support, the Magistrate Judge cited appellate counsel's testimony as to how he chose his particular appellate strategy based on what he believed would be most successful. (ECF No. 23 at 41–42.) She also noted that "two other inmates testified similarly to that of Tracy Black," stating that Petitioner also confessed to them his involvement in the Hanna murder. (ECF No. 23 at 42–43.)

Here, Petitioner first argues that appellate counsel's performance was deficient because he "chose an argument that stood no chance of succeeding on appeal over one that clearly stood a greater chance of success on appeal." (ECF No. 27 at 20.) He further argues that such error was "clearly prejudicial" "[g]iven the fact that Petitioner had a stronger Fifth Amendment claim than the Sixth Amendment argument advanced on direct appeal." (*Id.* at 22.)

These arguments fail to raise any issue that has not already been considered in exhaustive detail by the PCR court and the Magistrate Judge. Notably, Petitioner does not dispute the case law relied upon by the PCR court and the Magistrate Judge to find that confiding in an undercover agent/informant, as Black was in this matter, does not implicate any *Miranda* or Fifth Amendment concerns. *See*, *e.g.*, *Illinois v. Perkins*, 496 U.S. 292, 297 (1990) ("*Miranda* forbids coercion, not mere strategic deception by taking advantage of a suspect's misplaced trust in one he supposes to be a fellow prisoner. . . . Ploys to mislead a suspect or lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda*'s concerns."); *United States v. Stubbs*, 944 F.2d 828, 832 (11th Cir. 1991) ("*Miranda* and Fifth Amendment concerns are not implicated when a defendant misplaces her trust in a cellmate who then relays the information—whether voluntarily or by prearrangement—to law enforcement officials.").

The Court agrees with the Magistrate Judge's summation of the record and her examination of the case law cited above. Upon a thorough *de novo* review, the Court finds that Petitioner's claim for ineffective assistance of appellate counsel fails as a matter of law. This objection is therefore overruled.

## **CONCLUSION**

After a thorough review of the Report, the record, and the applicable law, the Court finds that Petitioner's objections are without merit. Accordingly, for the reasons stated above and by the Magistrate Judge, the Court overrules Petitioner's objections, adopts the Report, and incorporates it herein. It is therefore ORDERED that

Respondent's motion for summary judgment (ECF No. 11) is GRANTED and Petitioner's § 2254 petition is DISMISSED *with prejudice*.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . .only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability. . . shall indicate which specific issue or issues satisfy the showing required in paragraph (2).

28 U.S.C. § 2253 (c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims to be debatable or wrong and any dispositive procedural ruling by this Court to be likewise debatable. *See Miller-El v. Cockrell,* 537 U.S, 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F. 3d 676, 683 (4th Cir. 2011). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is DENIED.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

September 26, 2016
Greenville, South Carolina

*****

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.